UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY BURKE,

    Plaintiff,

v.                                          Case No. 1:15-cv-83
                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born in 1968. PageID.243. She earned a GED and had past employment as a cleaning manager for a movie theater and an animal care provider at a dog kennel. PageID.247. Plaintiff alleged a disability onset date of October 1, 2010. PageID.247. She identified her disabling conditions as carpal tunnel, nerve damage in hand, spur in shoulder, neck pain, and a trigger finger on her right hand. PageID.246. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 25, 2013. PageID.49-59. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of

October 1, 2010, through her date last insured of June 30, 2013. PageID.51. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of degenerative disc disease, carpal tunnel syndrome of the right upper extremity, and bilateral degenerative joint disease of the shoulders. PageID.51. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The ALJ decided at the fourth step that through the date last insured:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could frequently climb ramps and stairs and never climb ladders, ropes, and scaffolds; she could frequently balance, stoop, kneel, and crouch, but never crawl; she could occasionally handle and finger with the right upper extremity and occasionally reach overhead with her bilateral upper extremities; and she had to avoid concentrated exposure to excessive vibration and hazards.

PageID.53. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.57.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.57-58. Specifically, plaintiff could perform the following sedentary light, unskilled jobs in the Lower Peninsula of Michigan[1]: productions assembler (5,400 regionally and 110,000 nationally); greeter (1,500 regionally and 55,0000 nationally); and parking booth cashier (1,500 regionally and 50,000 nationally).[2] PageID.58. Accordingly, the ALJ determined that plaintiff has not been under a

---

[1] This decision follows a trend in which the ALJ's fail to identify the "region" where the jobs are located. This is basic information that should be included in the decision. In this instance, the vocational expert identified the region as the Lower Peninsula of Michigan. PageID.105.

[2] While the number of available jobs is not an issue in this case, the undersigned offers a personal observation that the number of parking booth attendants seems to have fallen noticeably in recent years,

disability, as defined in the Social Security Act, from October 1, 2010 (the alleged onset date) through June 20, 2013 (the date last insured). PageID.58-59.

### III. ANALYSIS

Plaintiff raised three issues on appeal.

**A.  The Commissioner erred by failing to consider, and by failing to assign appropriate weight to the opinions of Casey Bartman, M.D., the Plaintiff's treating physician.**

Plaintiff contends that the ALJ failed to assign appropriate weight to the opinion of Dr. Bartman, her treating orthopedic surgeon. Dr. Bartman performed a right carpal tunnel release on February 23, 2012, about one month after plaintiff filed her application for disability. PageID.49, 356. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective

---

which raises a question as to whether this remains a viable employment option in the Western District of Michigan.

to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Bartman's opinion as follows:

> Medical records of Dr. Casey R. Bartman, M.D., dated January 18, 2012, reflects that the claimant had been diagnosed with severe right carpal tunnel syndrome, cervical spondylosis, and right shoulder rotator cuff syndrome. (Exhibit 4F, pg. 2). It is noted that Dr. Bartman's assessment of severe carpal tunnel syndrome conflicts with the later dated objective findings according to electrodiagnostic testing and an EMG, which revealed moderate right carpal tunnel syndrome. (Exhibit 3F, pg. 3). Further, Dr. Bartman later reported that he believed the claimant had severe carpal tunnel syndrome and the EMG revealed "mildly severe" carpal tunnel. (Exhibit 4F, pg. 1). This is not entirely accurate, the assessment was moderate, not severe in any way.
>
> Dr. Bartman's examination of January 18, 2012, revealed a good range of motion her right shoulder, positive Spurling's maneuver of her neck, positive Tinel's sign of the right arm and wrist, and positive Phalen's maneuver. X-rays of the claimant's cervical spine showed spondylotic changes at C-5/5 and C-6/7, and x-rays of the right shoulder was unremarkable with a type I acromion present. (Exhibit 4F, pg. 2).

\*   \*   \*

> By February 13, 2013 [sic], the claimant was scheduled [sic] right carpal tunnel decompression, which she underwent on February 23, 2012. (Exhibits 4F, pg. 1 and 5F, pg. 2).
>
> \*     \*     \*
>
> March 3, 2012 medical records from Spectrum Health Primary Care show that the claimant's decompression incision looked clean and dry, and one suture had fallen out and the others were barely hanging in there. Regarding her depression and anxiety, Celexa was reported as working well and she had no new stressors. Further, her Celexa dosage was to be reduced from 40 mg to 20 mg. (Exhibit 6F, pg. 2). Dr. Casey Bartman reported on April 11, 2012 that the claimant continued to complain of pain throughout her right arm and there had been a concern of cervical radiculopathy initially. He noted that despite her EMG findings, the claimant had some degree of cervical radiculopathy and that he recommended some therapy. (Exhibit 9F, pg. 1 ).

PageID.55-56.

The ALJ did not address any particular opinion provided by Dr. Bartman with respect to her medical condition or RFC. Plaintiff relies on two limitations as set forth in Dr. Bartman's June 30, 2008 deposition taken during a workers' compensation case. PageID.428-429, 596. During that deposition, Dr. Bartman noted, among other things, that plaintiff had problems with her C5 disc causing some mild cord compression, and recommended "common sense" limitations on repetitive use of plaintiff's arm, noting that overhead activities and highly repetitive activities "are probably going to flare the things up." PageID.427-428. Plaintiff should also avoid "lifting of weights more than 15, 20 pounds on a repetitive basis," bending forward, and the "highly repetitive use of hand-type occupation or use of vibratory tools such as a leaf blower or screw gun." PageID.428-429.

The Court finds no error in the ALJ's failure to address this opinion, which was given more than two years before plaintiff's alleged disability onset date of October 1, 2010. *See Mohssen v. Commissioner of Social Security*, No. 12-14501, 2013 WL 6094728t at \*11 (E.D. Mich. Nov. 20,

2013) ("Courts have held that an ALJ's failure to mention a treating physician's opinion, which was based on the claimant's condition before the alleged onset date, is harmless error", citing *Heston*, 245 F.3d at 535).   In addition, this record was not required to be included in plaintiff's medical history, having been generated more than 12 months before plaintiff filed her application for benefits on January 21, 2012.  PageID.49.  *See* 20 C.F.R. § 404.1512(d)(2) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . .  (2)  By 'complete medical history,' we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application.").  Accordingly, plaintiff's claim of error is denied.

> **B.     The Commissioner erred by failing to consider, and by failing to assign appropriate weight to the opinions of David Burke.**

Plaintiff contends that the ALJ erred by failing to consider the written opinions of her husband, David Burke.  PageID.584.  Plaintiff does not identify Mr. Burke's opinions or explain why they are entitled to consideration.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, this claim of error is denied.

> **C.     The Commissioner erred by failing to acknowledge multiple conditions as "severe" at step two of the sequential analysis.**

Plaintiff contends that the ALJ erred by rejecting plaintiff's affective disorder and anxiety as non-severe impairments.  A "severe impairment" is defined as an impairment or

combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id*. An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff had severe impairments of degenerative disc disease, carpal tunnel syndrome of the right upper extremity, and bilateral degenerative joint disease of the shoulders. PageID.51. The ALJ's failure to include other severe impairments at step two is legally irrelevant. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 24, 2016  /s/ Ray Kent
　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　United States Magistrate Judge